UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

PANKAJ MERCHIA,
    Plaintiff,

    v.                                                    CIVIL ACTION NO.
                                                          18-10424-PBS
UNITED STATES OF AMERICA
INTERNAL REVENUE SERVICE
DAVID KAUTTER, COMMISSIONER,
    Defendant.

**REPORT AND RECOMMENDATION RE:**
**DEFENDANT UNITED STATES OF AMERICA'S MOTION FOR SUMMARY JUDGMENT**
**(DOCKET ENTRY # 140); PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**
**(DOCKET ENTRY # 147)**

**July 28, 2021**

**BOWLER, U.S.M.J.**

Pending before this court are two summary judgment motions: one filed by defendant United States of America Internal Revenue Service David Kautter, Commissioner ("defendant"), and the other filed by plaintiff Pankaj Merchia ("Merchia"). (Docket Entry ## 140, 147). Merchia opposes defendant's motion and defendant opposes Merchia's motion. (Docket Entry ## 157, 155). After conducting a hearing in January 2021, this court took the motions (Docket Entry ## 140, 147) under advisement.

PROCEDURAL BACKGROUND

Merchia initiated this action in March 2018 and moved to amend the complaint in December 2018. (Docket Entry ## 1, 35). In June 2019, this court allowed the motion to amend only as to

Count Three.   (Docket Entry # 49, pp. 3, 8, 22, nn.2, 5).[1]   Count Three sets out a tax refund claim against defendant under 26 U.S.C. § 7422 ("section 7422") for the erroneous or illegal assessment or collection of taxes for the 2012 tax year. (Docket Entry # 49, pp. 3, 8, nn.2, 5) (Docket Entry # 34).

STANDARD OF REVIEW

Summary judgment is designed "to 'pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required.'"   Tobin v. Fed. Express Corp., 775 F.3d 448, 450 (1st Cir. 2014) (internal citation omitted).   It is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   Fed. R. Civ. P. 56(a).   It is inappropriate "if the record is sufficiently open-ended to permit a rational factfinder to resolve a material factual dispute in favor of either side."   Pierce v. Cotuit Fire Dist., 741 F.3d 295, 301 (1st Cir. 2014).

"An issue is 'genuine' when a rational factfinder could resolve it [in] either direction," and a "fact is 'material' when its (non)existence could change a case's outcome."   Mu v. Omni Hotels Mgmt. Corp., 882 F.3d 1, 5 (1st Cir. 2018) (internal citation omitted) (parentheses in original).   The record is

---

[1]  Page numbers refer to the page number in the upper right-hand corner of a docketed filing.

viewed in favor of the nonmoving party, and reasonable inferences are drawn in his favor.  See Garcia-Garcia v. Costco Wholesale Corp., 878 F.3d 411, 417 (1st Cir. 2017).  "'"[C]onclusory allegations, improbable inferences, and unsupported speculation"'" are ignored.  Id. (internal citations omitted).  Where, as here, Merchia and defendant each filed a summary judgment motion, each motion is reviewed separately with factual disputes resolved in favor of the nonmoving party.  See OneBeacon America Ins. Co. v. Com. Union Assurance Co. of Can., 684 F.3d 237, 241 (1st Cir. 2012) (viewing cross motions for summary judgment "'separately,' in the light most favorable to the non-moving party, and draw[ing] all reasonable inferences in that party's favor") (internal citation omitted).

I.  Defendant's Summary Judgment Motion

### FACTUAL BACKGROUND

The facts presented in the light most favorable to Merchia are as follows.  Footnotes largely recount evidentiary rulings.

Merchia "signed and timely filed" a 2012 Form 1040, United States Individual Income Tax Return ("Original 2012 Return"), on which he reported $14,950,000 capital gain income, $14,963,484 taxable income, and "a total tax in the amount of $2,248,332." (Docket Entry # 140, ¶ 1) (Docket Entry # 158, ¶ 1) (Docket Entry # 141-1, lines 13, 43, 61).  Merchia's father, Jiwan

Merchia, prepared and signed the return.[2]   (Docket Entry # 141-

---

[2]   Merchia maintains he included both schedules C and D (Docket
Entry # 158-6, pp. 6-8) with the Original 2012 Return and
submits an affidavit to this effect (Docket Entry # 158-3, p. 4,
¶ 8).   Defendant points out that the return (Docket Entry # 158-
6) is unsigned and differs from the exhibit of the tax return
defendant filed, which is signed and does not include either
schedule C or D.   (Docket Entry # 141-1).   Defendant argues the
schedules are inadmissible hearsay and unauthenticated.   (Docket
Entry # 161, p. 3).

When offered to show the amount of tax liability or taxes
owed, the schedules constitute hearsay.   See United States v.
Bigalk, 654 F. Supp. 2d 983, 992 (D. Minn. 2009) ("tax returns,
offered to prove the amount of tax owed by Kenneth and Kathryn,
are inadmissible hearsay that the Responding Defendants cannot
use to avoid summary judgment"); accord Blodgett v. C.I.R., 394
F.3d 1030, 1040 (8th Cir. 2005) (dicta stating tax return
"generally considered inadmissible hearsay" except "may
constitute an admission by the taxpayer") (citing Greenbaum v.
United States, 80 F.2d 113, 125 (9th Cir. 1935)); United States
v. Brooks, C/A No. 6:17-cv-2010-TMC, 2019 WL 642917, at *5
(D.S.C. Feb. 15, 2019) ("proffered 1040 tax forms, which are
undated and unsigned tax forms prepared by Brooks," fail to
"rebut presumptively correct tax assessments because they are
hearsay"); Buaiz v. United States, 521 F. Supp. 2d 93, 97
(D.D.C. 2007) (noting Internal Revenue Service did not confirm
"tax returns were actually filed," and returns "are hearsay
documents, which cannot rebut the presumptively correct tax
assessments") (internal citation omitted).   As inadmissible
hearsay, the schedules (Docket Entry # 158-6, pp. 6-8) do not
and "cannot rebut the presumptively correct tax assessments"
(Docket Entry # 141-5).   Buaiz, 521 F. Supp. 2d at 97; see also
Evergreen Partnering Group, Inc. v. Pactiv Corp., 832 F.3d 1, 12
(1st Cir. 2016) ("hearsay evidence cannot be considered on
summary judgment").

With respect to the authenticity challenge, when a party
objects that summary judgment material "cannot be presented in a
form that would be admissible in evidence," Fed. R. Civ. P.
56(c)(2), the burden "falls 'on the proponent [Merchia] to show
that the material is admissible as presented or to explain the
admissible form that is anticipated.'"   Akers v. Beal Bank, 845
F. Supp. 2d 238, 243 (D.D.C. 2012) (quoting Advisory Committee
Notes, 2010 Amendment, Rule 56).   Authentication requires the
proponent to "'produce evidence sufficient to support a finding
that the item is what the proponent claims it is.'"   Navedo v.

1).  The Original 2012 Return did not mention a promissory note.[3]

(Docket Entry # 141-1) (Docket Entry # 141-10, p. 3) (Docket

Entry # 158-5, p. 3).  The Internal Revenue Service ("IRS") sent

Merchia a letter 12C requesting more information to process the

Original 2012 Return, but Merchia never received the letter.

(Docket Entry # 158-3, ¶ 10) (Docket Entry # 141-4).  In light

of Merchia's failure to respond, the IRS taxed the $14,950,000

capital gain at the short-term rate.  (Docket Entry # 158, ¶ 8).[4]

The IRS assessed Merchia's tax liability at $5,221,506.40 on

August 19, 2013.[5]  (Docket Entry # 141-5, p. 3) (Docket Entry #

---

Nalco Chem., Inc., 848 F. Supp. 2d 171, 201 (D.P.R. 2012)
(quoting Fed. R. Evid. 901(a)).  Whereas Merchia's father
prepared and signed the return (Docket Entry # 158, ¶ 2) and an
Internal Revenue Service June 13, 2013 letter asked Merchia to
send completed schedules C and D, which the letter describes as
"incomplete or missing" from the Original 2012 Return (Docket
Entry # 141-4), Merchia filed the return (Docket Entry # 158, ¶
1) and states by affidavit that the return "included schedules C
& D . . ."  (Docket Entry # 158-3, ¶ 8).  This is sufficient
authentication for purposes of summary judgment.
[3]  It is Merchia's position that the Original 2012 Return
(schedule D), and January 14, March 31, and May 13, 2014 Form
1040Xs include the amount of the promissory note in error.
(Docket Entry # 158, ¶¶ 4, 13, 17) (Docket Entry # 158-3, ¶¶ 12-
13) (Docket Entry # 148-2, ¶ 5).  Neither the original return
nor these Form 1040Xs expressly mention the promissory note.
(Docket Entry ## 141-1, 141-6, 141-8, 141-9).
[4]  Merchia does not controvert the corresponding paragraph in
defendant's LR. 56.1 statement (Docket Entry # 158, ¶ 8), which
operates as deeming admitted the facts in the uncontroverted
paragraph.  See LR. 56.1.
[5]  Merchia points to IRS Examiner Mia Alonzo's comment in an
email that the taxes were calculated incorrectly by classifying
"installment sale income as short term" and that Merchia would
potentially get a refund of over $2 million.  (Docket Entry #
158-9, p. 7).  As argued by defendant (Docket Entry # 161, p. 5,

141-12, p. 6).

On January 14, 2014, Merchia faxed a Form 1040X, Amended United States Individual Income Tax Return, for the 2012 tax year to the IRS. (Docket Entry # 141-6). The Form 1040X was dated January 14, 2014 and set out $14,950,000 as long-term capital gain resulting in $14,973,234 adjusted gross income, $14,963,484 taxable income, and a total tax of $2,248,332. (Docket Entry # 141-6, pp. 7-8, 13). Merchia remitted

---

¶ 9), however, the IRS Examiner's statements are not binding on the IRS in a de novo tax refund suit. Estate of McNeely v. United States, Civil No. 12-CV-1973 (SRN/JJK), 2014 WL 2617418 at *2, 5 (D. Minn. June 12, 2014) (regardless of how IRS employee characterized "estimated payment" in favor of taxpayer, "tax refund suits are de novo proceedings, and it is for the Court to apply the law to the facts in the record") (rejecting argument that employee's statement constituted an admission against IRS) (citation omitted); see Trinity Indus., Inc. v. United States, 757 F.3d 400, 413, n.31 (5th Cir. 2014) (noting that "'reasons for the Commissioner's determination are not relevant'" in a de novo tax return suit). Similarly, the IRS Examiner's comment amounts to an inaccurate legal determination of the promissory note as an installment sale under 28 U.S.C. § 453(c), which does not bind the IRS Commissioner or the court. See Trugman v. C.I.R., 138 T.C. 390, 394 (2012) (collecting cases). As explained in the discussion section, the promissory note (Docket Entry # 158-5, p. 3) is a payable-on-demand promissory note that falls within an exception to treating a payment as income in the year received under an installment method. 26 U.S.C. §§ 453(c), 453(f)(4)(A).

The same ruling applies to another exhibit which Merchia offers (Docket Entry # 158-15) (Docket Entry # 148-2, p. 76). This exhibit consists of an IRS "Bank Deposit Analysis" and reflects "gross receipts" comprised of $14,950,000 "Installment Sale Income" and $25,000 "Schedule C-1 Income" yielding no adjustment for the 2012 tax year. Defendant aptly describes the exhibit as an "IRS work paper" (Docket Entry # 161, p. 9, ¶ 18), which is not binding in this tax refund suit. See McNeely, 2014 WL 2617418 at *2, 5; Trinity Indus., 757 F.3d at 413 & n.31.

$2,248,332 to the IRS with a check drawn on a "bank account of D3 Holdings LLC." (Docket Entry # 158, p. 2, ¶ 6) (Docket Entry ## 141-2, 141-3). The Form 1040X contained the following explanation: "'Tax method used to figure Tax: IRS characterized gain as [s]hort term, whereas the tax payer had characterized it as long term. This is because IRS does not seem to have received Schedule D.'" (Docket Entry # 140, ¶ 12) (Docket Entry # 158, p. 4) (Docket Entry # 141-6, p. 9). Merchia maintains he did not exclude the amount of the promissory note from income in this filing because he had not yet been informed by Albert Kassis ("Kassis"), a certified public accountant, that he could exclude it.[6] (Docket Entry # 158-10) (Docket Entry # 158-3, ¶¶ 12-13) (Docket Entry # 148-2, p. 56).

On March 31, 2014, Merchia sent another Form 1040X to the IRS similar to the January 14, 2014 Form 1040X. (Docket Entry ## 141-6, 141-8). Like the January 14, 2014 Form 1040X, there was no explicit mention of the promissory note, but $14,950,000 is listed as long-term capital gain along with the same

---

[6] Defendant argues that Merchia's affidavit cited by Merchia (Docket Entry # 158-3, ¶ 12) to support this contention is hearsay. (Docket Entry # 161, ¶ 11, Reply). While parts of the affidavit may contain hearsay, the cited paragraph does not. In the cited paragraph, Merchia presumably offers what Kassis purportedly told him to show what the effect of Kassis' words was on him (Merchia). (Docket Entry # 158-3, ¶ 12). Thus, because it is not a statement offered for "the truth of the matter asserted," it is not hearsay. See Fed. R. Evid. 801(c)(2).

explanation that the "IRS characterized gain as [s]hort term . . ." (Docket Entry # 141-8, pp. 5, 9).

On or about May 13, 2014, Merchia sent another Form 1040X to the IRS in which he decreased his adjusted gross income by $223,333 and claimed a refund of $41,134.  (Docket Entry # 141-9, p. 3).  The May 13, 2014 Form 1040X changed the previous long-term capital gain of $14,950,000 to $14,750,000 with the explanation that Merchia previously "wrongly entered" the basis "as $25,000" and was now correcting the basis to $250,000.  As instructed, the May 13 Form 1040X included Form 8949 for "Sales and Other Dispositions of Capital Assets."  (Docket Entry # 141-9, pp. 10, 12-13).  The Form 8949 described the property sold as "SleepHeart ein ____ [redacted] including a US Patent and custom written software and equipment" and reported the proceeds as $15,000,000 with $250,000 listed in a "Cost or other basis" column thereby yielding the $14,750,000 long-term capital gain. (Docket Entry # 141-9, pp. 5, 10, 12-13).  On the form, Merchia listed his business income as $1, bringing the adjusted gross income to $14,750,001.  (Docket Entry # 141-9, p. 5).  Merchia later acknowledged he did not know how to fill out complex forms such as Form 8949.  (Docket Entry # 158, p. 6).  There is no explicit mention of a promissory note in the May 13, 2014 Form 1040X, although Merchia maintains the purported sum of the note (Docket Entry # 141-15, p. 2) is included in the above-noted

gross income.  (Docket Entry # 141-9, pp. 2-3, 13) (Docket Entry # 158, ¶ 19) (Docket Entry # 158-3, ¶¶ 12-13).

On May 29, 2014, Kassis met with Merchia.  (Docket Entry ## 158-10, 158-17)[7] (Docket Entry # 158-3, p. 5, ¶¶ 15-16).  On June 5, 2014, Merchia filed another Form 1040X amended return for the 2012 tax year in which he claimed a decrease of $10,310,712 in the amount of adjusted gross income to a "correct amount" of $4,662,522 (from the previous $14,973,234), treated as long-term capital gain and installment sale income, and an entitlement to a refund of $1,564,368.[8]  (Docket Entry # 141-10, pp. 2, 4-5, 9-10, 15).  This filing included the first mention of the promissory note and an explanation of why Merchia believed he

---

[7]  Defendant objects to the inclusion of the above email (Docket Entry # 158-10) (Docket Entry # 148-2, p. 56) as inadmissible hearsay.  (Docket Entry # 161, p. 6, ¶ 11).  The email chain is not offered for the truth of the matter asserted.  Rather, it is offered to show when communications between Kassis and Merchia began.  Thus, it is not hearsay.  Fed. R. Evid. 801(c)(2); Espedito Realty, LLC v. Nat'l Fire Ins. Co. of Hartford, 935 F. Supp. 2d 319, 325 n.3 (D. Mass. 2013) (holding that emails are not hearsay because they are offered to show that communications occurred, not to prove truth of matters asserted in them).  Defendant also objects (Docket Entry # 161, ¶¶ 23, 25) to the inclusion of another email between Kassis and Merchia with an attachment (Docket Entry # 158-17) but does not adequately develop the argument with a citation to legal authority as to why it cannot be included.  See Curet-Velázquez v. ACEMLA de P.R., Inc., 656 F.3d 47, 54 (1st Cir. 2011) ("[a]rguments alluded to but not properly developed before a magistrate judge are deemed waived"); Coons v. Indus. Knife Co., Inc., 620 F.3d 38, 44 (1st Cir. 2010).
[8]  The form requested that $100,000 be applied to Merchia's 2013 estimated tax thus yielding a refund of $1,464,368.  (Docket Entry # 141-10, p. 2).

should not be taxed on it, which included his citation of 26
C.F.R. § 15a.453-1 ("regulation 15a.453-1").  (Docket Entry #
141-10, pp. 3-4).  Thus, in the June 5, 2014 Form 1040X, Merchia
describes the note as part of an installment sale and "not a
receipt of [payment]."  (Docket Entry # 141-10, pp. 3-4).  In
pertinent part, Merchia's explanation and interpretation of the
regulation in the amended return are that he:

> Had taken 15,000,000 as Profit for an instalment [sic]
> sale.  This included a promisory [sic] note of $10,300,000.[9]
> Form 6252 and 4797 have been prepared to flow Capital Gain
> to Schedule D . . .
>
> 26 CFR 15a.453-1 – Installment method reporting for sales
> of property and casual sales of personal property . . .
>
> Promissory note not a receipt of [payment] from an
> "Instalment [sic] Sale."

(Docket Entry # 141-10, pp. 3-4).  By affidavit filed in this
action, Merchia belatedly explains that he mistakenly included a
$2.25 million "un-depositable" or uncashable check in his income
in the June 5, 2014 Form 1040X.[10]  (Docket Entry # 158-3, ¶ 13).

---

[9]  The June 5, 2014 Form 1040X includes Form 6252 (Installment
Sale Income) reporting installment payments of $4,700,000
received in 2012.  (Docket Entry # 141-10, p. 15).  The form
reflects that Merchia sold his property "SleepHeart" in November
2008 and received $185,011 in "payment on [the] installment
obligations" in the years prior to 2012 for the sale.  (Docket
Entry # 141-10, p. 15).  As noted below, the promissory note
"promises to pay" Merchia "the amount of $15,000,000" less
amounts previously paid.  (Docket Entry # 141-15, p. 2).
[10]  While defendant contends that the claim for the refund rests
on the argument that Merchia mistakenly included $10,300,000 in
his income due to the promissory note and that the note is not
income, Merchia argues *inter alia* that the claim for a refund

On September 1, 2015, the Small Business and Self-Employed division of the IRS reviewed Merchia's refund claim for the 2012 tax year and issued a Form 4559 Examination Report.  The Form 4549 stated that: Merchia was entitled to a reduction in his taxable income of $47,583; the $14,950,000 capital gain should be "reclassed from short-term to long term"; his revised taxable income was $14,915,901; he had overpaid his taxes by $2,985,345; and his corrected income tax was $2,236,161.  (Docket Entry # 141-12, pp. 6, 10).  Thereafter, Merchia filed an appeal in which he claimed entitlement to a refund of $1,464,368.  (Docket Entry # 141-13, p. 2).  On June 2, 2016, the IRS Appeals Office issued a Form 5278 reflecting the same revised taxable income ($14,915.901) and overpayment ($2,985,345) set out in the Examination Report.  (Docket Entry # 141-13).  As stated in a cover letter, the Appeals Office declined to grant the entire claim because it did not reduce the $15,000,000 that was "originally reported as installment gain" and further stated that "[t]he $15,000,000 incorrectly classified as short term

---

arises from the mistaken inclusion of the $2.25 million "un-depositable check" as part of the promissory note treated as 2012 income.  (Docket Entry # 141-10, pp. 3-4) (Docket Entry # 158-3, ¶ 13).  Even assuming in Merchia's favor a mistaken inclusion of the $2.25 million check, the variance doctrine precludes Merchia from raising and this court addressing the matter for reasons explained in the discussion section. Separately, defendant agrees that the check "was not cashed." (Docket Entry # 163, p. 15).

capital gain has been converted to long term gain and the tax reduced accordingly." (Docket Entry # 141-13, p. 2). In May 2018, the certificate of assessment issued with the same deficiency ($2,985,345). (Docket Entry # 141-5).

On September 8, 2020, Merchia produced electronic files pursuant to this court's August 5, 2020 Order (Docket Entry # 135) allowing defendant's motion to compel. (Docket Entry # 140, ¶ 28) (Docket Entry # 158, ¶ 28). Merchia "produced by and through his counsel a Court-ordered affidavit and an Adobe PDF electronic file for a promissory note, dated December 31, 2012, in the amount of '$15,000,000 (fifteen million dollars) less any amount previously paid.'" (Docket Entry # 140, ¶ 28) (Docket Entry # 158, ¶ 28).

In his affidavit pursuant to the August 5, 2020 Court Order, Merchia stated that upon signing documents contained in "Exhibits 1 through 4," "PDF files were created and native versions were deleted to avoid confusion with drafts." (Docket Entry # 141-14, p. 2). "Exhibit 1" is a copy of the promissory note. (Docket Entry # 141-15). Merchia qualifies this by averring this is an "ideal practice" that he does not often follow. (Docket Entry # 158-3, ¶ 22). He further explains that because Shona Pendse ("Pendse"), not Merchia, last signed these documents, the note might not have been converted to a PDF right

12

away, because Pendse does not follow his same practices.[11]
(Docket Entry # 158-3, ¶¶ 18, 21).  Pendse is SleepHeart of
Virginia LLC's "sole member."[12]  (Docket Entry # 158-5, p. 1, ¶
1).  The promissory note, which Pendse signed as "Member" of
SleepHeart of Virginia LLC, reflects that SleepHeart of Virginia
LLC purchased for $30 million SleepHeart LLC, Merchia's medical
technology company, from Merchia when he sold it in 2008, which
Merchia confirms by affidavit.[13]  (Docket Entry # 141-15, p. 2)
(Docket Entry # 158-5, p. 3) (Docket Entry # 148-2, ¶ 1).

The promissory note is a copy (Docket Entry # 141-21, pp.
15, 20-23) (Docket Entry # 158-3, ¶ 19) and was retrieved by
Merchia from a SleepHeart of Virginia LLC hard disk or one of
his computers (Docket Entry # 141-21, pp. 12-14, 20-21) (Docket
Entry # 158-3, ¶ 19).  Pendse states by affidavit that the
promissory note is an "accurate depiction of the promissory
note" she "signed" in 2012.[14]  (Docket Entry # 158-5, p. 2, ¶ 3).

---

[11] Defendant disputes this and argues that Merchia must have
created the PDF contemporaneously with the Microsoft Word
document.  (Docket Entry # 161, ¶ 40); see fn. 17.
[12] Pendse lived with Merchia "sometimes" or "[a]t times" and is
the mother of his children.  (Docket Entry # 141-20, p. 10).
[13] Merchia provided no documentation of the 2008 sale because he
states in his affidavit that he has not been able to locate the
original agreement.  (Docket Entry # 158-3, ¶ 23).
[14] Invoking the "'sham affidavit rule,'" defendant argues that
Pendse's affidavit statement that she "executed [the] promissory
note" (Docket Entry # 158-5, p. 2, ¶ 2) is "misleading" and
"conflicts with her prior sworn deposition testimony" because
she did not prepare the note" and "just signed it when asked by
Mr. Merchia."  (Docket Entry # 161, pp. 16-18).  The cited

It reads:

> SleepHeart of Virginia LLC, with an address at 11526 Seneca
> Woods Ct, Great Falls, VA 22066, hereby promises to pay
> Pankaj Merchia of 2715 Spanish River Rd, Boca Raton, FL
> 33432, the amount of $15,000,000 (fifteen million dollars)
> *less any amounts previously paid* to Pankaj Merchia *for the
> purchase of SleepHeart LLC* (a Massachusetts LLC) in 2008.[15]
>
> This promise is part of the previously agreed upon payment
> of $30,000,000 (thirty million dollars) for SleepHeart of
> Virginia LLC's purchase of SleepHeart LLC (a Massachusetts
> LLC). This promissory note dated December 31, 2012 does not
> create any new or additional liabilities for SleepHeart of
> Virginia LLC that did not exist previously.

(Docket Entry # 141-15, p. 2) (emphasis added); (Docket Entry #
158-5, p. 3) (emphasis added).  The promissory note does not
include a date for repayment.  (Docket Entry # 141-15, p. 2)
(Docket Entry # 158-5, p. 3).  Merchia drafted the promissory
note.  (Docket Entry # 141-20, p. 29).

The PDF file produced by Merchia contained metadata
including a "Created" date of September 4, 2014 at 9:04:51 a.m.

---

deposition testimony (Docket Entry # 141-22, pp. 7-8) does not
sufficiently conflict with Pendse's averment to invoke the rule.
See Escribana-Reyes v. Prof'l Hepa Certificate Corp., 817 F.3d
380, 386 (1st Cir. 2016) ("'party has given "*clear* answers to
unambiguous questions" in discovery, that party cannot "create a
conflict and resist summary judgment with an affidavit that is
*clearly* contradictory"'") (citations omitted) (emphasis added).
[15]  During Merchia's deposition, he did not provide a definitive
answer to the "amount previously paid" under the promissory note
when asked to state the amounts.  (Docket Entry # 141-20, pp.
37-38).  Rather, he simply replied "some amounts," and when
asked for the "aggregate amount previously paid" as of the
December 2012 date of the promissory note, Merchia replied he
did not remember.  (Docket Entry # 161, ¶ 35) (Docket Entry #
141-20, pp. 37-38); see fn. 9.

and a "Modified" date of September 4, 2014 at 9:04:51 a.m.[16]

(Docket Entry # 141-16, p. 8).  The metadata showed that the PDF

was created from a Microsoft Word document.  (Docket Entry #

158, ¶ 41) (Docket Entry # 140, ¶ 41).  The metadata further

revealed that the "PDF Producer was Acrobat Distiller 10.1.10

(Windows)."  (Docket Entry # 158, ¶ 42) (Docket Entry # 140, ¶

42).  This version of Acrobat Distiller 10.1.10 (Windows) was a

"planned update" on May 13, 2014.[17]  (Docket Entry # 141-23).

---

[16]  Merchia asserts there is no evidence that he "created" the
PDF.  (Docket Entry # 158, pp. 13-14); see fn. 17.
[17]  The parties dispute when the copy of the promissory note was
created, including Merchia's adherence to his practice of
creating PDFs and deleting native versions, and the computer
from which Merchia retrieved it.  In particular, defendant
objects to eight paragraphs in Merchia's affidavit (Docket Entry
# 158-3, ¶¶ 2-6, 18-19, 22) (Docket Entry # 161, p. 16, ¶ 40) on
the basis of improper expert testimony and the sham affidavit
rule.  (Docket Entry # 161, pp. 14-20).  As to improper expert
testimony, defendant objects to "certain portions" of the
affidavit (Docket Entry # 158-3) regarding "the reliability of
PDF metadata" and "metadata practices between himself and Ms.
Pendse."  (Docket Entry # 161, p. 19).  Defendant argues that
Merchia is "the plaintiff and a lay witness in this case, and he
may not offer testimony about the reliability of PDF metadata,
or offer comparisons of metadata practices between himself and
Ms. Pendse."  (Docket Entry # 161, p. 19, ¶ 40).  The argument
implicates paragraph six (Docket Entry # 158-3, ¶ 6) and, to a
lesser degree, the other seven paragraphs (Docket Entry # 161,
p. 16, ¶¶ 2-5, 18-19, 22).  As to the sham affidavit argument,
defendant submits the rule should apply to "Merchia's affidavit
statements concerning where [Merchia] found the PDF of the
promissory note" (Docket Entry # 158-3, ¶ 19) and his deviation
from "his typical practice" of creating a PDF file and deleting
the original file (Docket Entry # 158-3, ¶ 22).  (Docket Entry #
161, p. 18, ¶ 40).  Defendant argues that Merchia is attempting
to create material issues of fact through contradicting his
prior sworn statements to avoid summary judgment.  (Docket Entry
# 161, p. 14, ¶ 40).

On June 10, 2014, Merchia faxed a Form 433-A, Collection
Information Statement for Wage Earners and Self-Employed
Individuals, to the IRS and reported he managed 14 business
entities.  (Docket Entry # 141-17).  During this litigation,
Merchia agreed to "'provide a precise accounting of every penny
[SleepHeart of Virginia LLC] received or paid during the
relevant periods.'"  (Docket Entry # 158, ¶ 47) (Docket Entry #
140, ¶ 47).  One document that Merchia could not locate,
however, was the original 2008 sale agreement of his medical

---

The recitations in the disputed paragraphs (Docket Entry #
158-3, ¶¶ 2-6, 19, 22) are not material to the adjudication of
the summary judgment motions.  Whether or not these affidavit
paragraphs are a sham or include expert testimony is not
material to this court's recommendation to allow defendant's
motion and deny Merchia's motion.  It is therefore not necessary
to resolve the matter.  Thus, for purposes of defendant's
summary judgment motion (as well as for Merchia's motion), the
date and the computer at issue as well as the reliability of the
metadata and Merchia's deviation set out in these challenged
affidavit paragraphs (Docket Entry # 158-3, ¶¶ 2-6, 19, 22) do
not alter the recommendation to allow defendant's motion because
the terms of the note (Docket Entry # 158-5, p. 2) show it is a
payable-on-demand promissory note that falls into an exception
to the payment rule under the installment method.  26 U.S.C. §
453(f)(4)(A).  The promissory note fails to include a repayment
date (Docket Entry # 158-5, p. 3) and Pendse states by affidavit
that the promissory note "appears to be a true and accurate
depiction of" what she signed.  (Docket Entry # 158-5, p. 1).
    Regarding the remaining paragraph defendant challenges
(Docket Entry # 158-3, ¶ 18) (Docket Entry # 161, p. 16, ¶ 40),
defendant's description that it states or shows "[t]hat Ms.
Pendse seemingly created the promissory note via a Microsoft
Word Document that she electronically signed" (Docket Entry #
161, p. 16, ¶(3)) is inaccurate as to the former and not clearly
contradictory with Pendse's deposition as to the latter, i.e.,
Pendse signing the document.  See fn. 14.

software company, SleepHeart LLC, to SleepHeart of Virginia
LLC.[18]   (Docket Entry # 158-3, ¶ 23) (Docket Entry # 148-2, ¶ 1).
Merchia testified at his deposition that "Sleepheart had loaned
[him] some money in 2011 to purchase a property, and [he] repaid
that money in 2012" (Docket Entry # 141-20, p. 40), and in 2012
SleepHeart of Virginia LLC and Merchia agreed to "'convert' the
loan amount (with interest) into an installment payment for the
sale at issue, so that Mr. Merchia did not have to repay the
loan."  (Docket Entry # 158, ¶ 49); (Docket Entry # 140, ¶ 49)
(Docket Entry # 141-20, p. 40); (Docket Entry # 153, p. 21)
(loan repayment document dated August 2, 2012, reciting
Merchia's acceptance of $1,214,064.53 as "installment payment"
for 2008 sale of "SleepHeart (of Massachusetts) LLC").[19]  "At

---

[18]  See fn. 13.

[19]  Merchia's deposition testimony reads as follows:

   [Merchia]: So SleepHeart, in 2011, loaned me money to
   purchase D3 Holdings, actually.  And, in 2012, it had me --
   it converted that loan into an installment payment . . .

   [Question]: So it transferred that amount back to you as an
   installment payment?

   [Merchia]: Correct . . .

   [Question]: And so the 1.2 million was characterized by you
   in 2012 as an installment payment?

   [Merchia]: Um-hum. Yes.

(Docket Entry # 141-20, pp. 40-41).

least some of the payments received by" Merchia "for the $30 million sale were deposited directly into accounts held in the name of Mr. Merchia's business entities."  (Docket Entry # 158, ¶ 50) (Docket Entry # 140, ¶ 50).

DISCUSSION

Defendant seeks summary judgment on the tax refund claim under section 7422 for the erroneous or illegal assessment or collection of taxes for the 2012 tax year.  (Docket Entry # 140).  Defendant argues that: (1) Merchia does not meet the burden of proof of showing that the IRS' determination was wrong and, as a result, he is not entitled to a refund; (2) the promissory note upon which Merchia bases his entitlement for a refund is "a sham"; (3) the duty of consistency estops Merchia from arguing that he received the $14,950,000 or the $2.25 million check in a tax year now closed to review by the IRS; and (4) even if the promissory note is not a "sham," it is not excludable from income in 2012 because it was payable on demand. (Docket Entry # 142).  Merchia opposes the summary judgment motion and asserts that: (1) the burden of proof is on defendant to produce evidence that Merchia received the funds in question in 2012; (2) the promissory note is not a sham; (3) the

installment payments not received by Merchia in 2012 should be excluded from 2012 income because the promissory note was not a demand note; and (4) because defendant "misapplies the 'duty of consistency,'" Merchia should not be estopped from recouping an overpayment of $1,778,332.80.  (Docket Entry # 157).  As explained below, defendant's third argument regarding the non-excludability of the promissory note coupled with the variance doctrine warrant allowing defendant's motion.

Regarding the burden of proof, "[i]t is beyond hope of contradiction that, in a tax refund suit, the complaining taxpayer bears the burden of proving the incorrectness of the challenged tax treatment." Muskat v. United States, 554 F.3d 183, 188 (1st Cir. 2009).  On summary judgment, Merchia therefore bears the underlying burden of proof at trial.  In addition, Merchia's attempt to shift his burden under 26 U.S.C. § 7491(a) ("section 7491(a)") (Docket Entry # 157, pp. 2-3) is unavailing largely for reasons stated by defendant (Docket Entry # 163, pp. 6-7) (explaining Merchia's noncompliance with section 7491(a) and incorporating arguments in defendant's opposition to Merchia's summary judgment motion); (Docket Entry # 155, pp. 14-16).[20]  Merchia fails to provide "credible evidence with respect

---

[20]  Even if the burden did shift on a factual issue, the dispositive issue regarding the payable-on-demand promissory note coupled with the variance doctrine still warrants summary judgment in defendant's favor as discussed below.

to any [material] factual issue."  26 U.S.C. § 7491(a); see
Esgar Corp. v. Comm'r of Internal Revenue, 744 F.3d 648, 653 &
n.5 (10th Cir. 2014) (section 7491(a) "shifts the burden of
proof to the Commissioner on any factual issue that the taxpayer
supports with credible evidence").  Merchia has also not
"maintained all records" and "cooperated with reasonable
requests by the Secretary for witnesses, information, documents,
meetings, and interviews."  26 U.S.C. § 7491(a); see generally
Syed v. Comm'r of Internal Revenue, T.C.M. (RIA) 2017-226 (T.C.
2017).

A.  Variance Doctrine

        In seeking summary judgment, defendant argues that the
variance doctrine precludes Merchia from relying on arguments he
did not make to the IRS during the administrative process,
namely, "that income reported in 2012 was actually received and
reported in another" tax year.  (Docket Entry # 142, pp. 5, 8-9,
19-20) (Docket Entry # 158-15).  In response, Merchia asserts
that he reported and erroneously included the "uncashable check
for $2.25 million" in the Original 2012 Return even though he
did not receive the funds because SleepHeart of Virginia LLC
lacked the funds to pay the check.  (Docket Entry # 157, p. 7).
Merchia also notes that the IRS Examiner performed a simplified
bank deposit analysis summary which identified total deposits or
credits in 2012 ($2,842,374.88) and nontaxable deposits and

credits ($350,559.14).[21]   (Docket Entry # 157, p. 3, lines 2-3)
(Docket Entry # 149, p. 7) (Docket Entry # 158-15) (Docket Entry
# 148-2, p. 76).  Defendant's reply incorporates its opposition
to Merchia's summary judgment motion, which addresses at length
why the uncashable $2.25 million check argument is at variance
with the administrative claim Merchia presented to the IRS.
(Docket Entry # 163, p. 6) (Docket Entry # 155, pp. 5-12).

   Merchia's original claim to the IRS for an income tax
refund was that he incorrectly included the value of the
promissory note for the sale of his company in the Original 2012
Return and that, under regulation 15a.453-1, promulgated under
26 U.S.C. § 453 ("section 453"), the amount of the promissory
note should not have been taxed.  (Docket Entry # 141-10, pp. 3-
4).  Merchia also argued entitlement to capital gain income of
$14,950,000 taxed at the long-term rate.  (Docket Entry # 158,
p. 4, ¶ 12) (Docket Entry # 140-6, pp. 9, 13).  He now raises
entitlement to a refund based on the "undepositable" $2.25
million check from SleepHeart of Virginia LLC because "the
government cannot prove that the Plaintiff received $2.25
million at issue."  (Docket Entry # 147, p. 1); (Docket Entry #

---

[21]  As previously noted, the IRS Examiner's bank analysis is not
binding.  <u>See</u> fn. 5.  Separately, defendant's hearsay objection
(Docket Entry # 152, pp. 16-17, ¶ 18) to Merchia's recitation of
an Examination Supervisor's statement (Docket Entry # 148, ¶ 18)
(Docket Entry # 148-2, p. 3, ¶ 13) is well taken.

149, p. 7) (SleepHeart of Virginia LLC "did not have sufficient
funds in its bank account to allow cashing of a $2.25 million"
check in 2012); (Docket Entry # 157, p. 3, lines 2-3).  Contrary
to this theory now raised, Merchia submitted financial materials
to the IRS showing he received the $2.25 million check from
SleepHeart of Virginia LLC in 2012 as part of the $5,455,372.46
"payments from [SleepHeart of Virginia LLC] to/for [Merchia] or
his companies."[22]  (Docket Entry # 148-2, p. 7) (Docket Entry #
158-18, p. 5).

---

[22]  The financial records itemizing payments are hearsay if
offered to show SleepHeart of Virginia LLC made these payments,
see United States v. McNicol, 829 F.3d 77, 82-83 (1st Cir.
2016); see also Buaiz, 521 F. Supp. 2d at 97, as pointed out by
defendant (Docket Entry # 152, p. 5) (Docket Entry # 155, p.
20).  With respect to the variance doctrine, however, defendant
seeks to use the record reflecting Merchia's receipt of the
$2.25 million check (Docket Entry # 158-18, p. 5) for a
different purpose, namely, that Merchia presented a contrary
contention to the IRS than he does to this court (Docket Entry #
155, p. 10 & n.2).  As such, the document is not a statement
made for the truth of the matter asserted.
     The financial records show that in the years 2009 to 2012
Merchia received "installment sale payments" and is due sums for
services rendered by him to SleepHeart of Virginia LLC.  (Docket
Entry # 158-18, pp. 2-5).  In pertinent part, the records list
$5,455,372.46 in "[t]otal payments in" 2012 from SleepHeart of
Virginia LLC "to/for Pankaj or his companies."  (Docket Entry #
158-18, p. 5).  After accounting for rent and past and current
services, the exhibit reflects that Merchia received
"installment sale payments" of $5,394,448.93 in 2012.  (Docket
Entry # 158-18, p. 5).  The exhibit has IRS numbers on the
bottom thus indicating it was provided to the IRS at some point.
(Docket Entry # 158-18, pp. 2-5).  Merchia filed a duplicate
exhibit in support of his summary judgment motion.  (Docket
Entry # 148-2, p. 7).

Under the variance doctrine, taxpayers are prohibited from raising claims for a refund that were not presented in the administrative claim for the refund to the IRS.  See Muskat, 554 F.3d at 195 (affirming district court's lack of jurisdiction over claim for refund not raised in administrative phase to IRS); 26 U.S.C. § 7422(a) ("section 7422(a)"); 26 C.F.R. § 301.6402-2(b)(1) ("regulation 301.6402-2(b)(1)") (claim "must set forth in detail each ground upon which . . . refund is claimed and facts sufficient to apprise the Commissioner of the exact basis thereof").  Quoting regulation 301.6402-2(b)(1) and section 7422(a), the First Circuit in Muskat explains that "these provisions bar 'a taxpayer from presenting claims in a tax refund suit that "substantially vary" the legal theories and factual bases set forth in the tax refund claim presented to the IRS.'"  Muskat, 554 F.3d at 194 (quoting Lockheed Martin Corp. v. United States, 210 F.3d 1366, 1371 (Fed. Cir. 2000)).  A substantially varied legal theory is one "not explicitly or implicitly set forth in the taxpayer's administrative refund application."  Muskat, 554 F.3d at 195 (citing Lockheed, 210 F.3d at 1371); Lockheed, 210 F.3d at 1371 (describing "legal component of" variance rule as barring "'any legal theory not expressly or impliedly contained in the application for refund'") (citation omitted).

Factual bases for refund "similarly may not substantially

vary at trial" from those "raised in the refund claims presented
to the IRS." Lockheed, 210 F.3d at 1371. For example and
pertinent to the case at bar, adding research expenses to a
legal claim "would constitute a substantial variance of the
factual basis of" a tax refund claim founded upon "particular
research expenses" which entitle the taxpayer "to a tax credit."
Id. The First Circuit in Muskat also cautions that "it is not
the IRS's responsibility to make a case for the taxpayer that
the taxpayer himself has opted not to make." Muskat, 554 F.3d
at 195; see also Magnone v. United States, 733 F. Supp. 613, 618
(S.D.N.Y. 1989).

The purposes of the variance doctrine are threefold. See
Lockheed, 210 F.3d at 1371. The doctrine "(1) gives the IRS
notice as to the nature of the claim and the specific facts upon
which it is predicated; (2) gives the IRS an opportunity to
correct errors; and (3) limits any subsequent litigation to
those grounds that the IRS had an opportunity to consider and is
willing to defend." Id.

In the case at bar, any effort by Merchia to substantially
vary the legal or factual bases for a refund from the
administrative claim he made to the IRS is therefore not
reviewable by this court. In this litigation, Merchia raises
the new theory regarding his entitlement to a refund based on
the uncashable $2.25 million check from SleepHeart of Virginia

LLC.  The argument substantially varies in both factual and
legal substance from his administrative claim with the IRS.
Instead of seeking a refund from the IRS based the uncashable
nature and therefore non-receipt of the $2.25 million check,
Merchia argued that receipt of funds in 2012 under the
installment method regarding the promissory note is the correct
means to calculate payments under the $15 million promissory
based on regulation 15a.453-1.  The IRS had no notice regarding
the uncashable $2.25 million as excluded from 2012 income.
Although Merchia asserts he provided the IRS "all of his bank
records" and that the IRS Examiner calculated deposits and
credits for the 2012 tax year (Docket Entry # 157, p. 7) (Docket
Entry # 149, p. 7) (Docket Entry # 158-15) (Docket Entry # 148-
2, p. 76), there is little indication that Merchia adequately
apprised the IRS with the factual detail that the $2.25 million
check was not income because it was not cashable.  Rather, he
argued that installment payments under the promissory note are
not income until the year the payment is received under
regulation 15a.453-1 (Docket Entry # 141-10, pp. 3-4) and
affirmatively represented receipt of the check (Docket Entry #
158-18, p. 5).

    As set out in the January 14, 2014 Form 1040X, he also
argued entitlement to capital gain income of $14,950,000 taxed
at the long-term rate.  (Docket Entry # 158, p. 4, ¶ 12) (Docket

Entry # 140-6, pp. 9, 13).  He repeated the long-term capital
gain argument in the March 31, 2014 Form 1040X.[23]  (Docket Entry
# 140-8, p. 5).

The legal theories Merchia raised to the IRS in the
administrative proceedings therefore consisted of: (1) treatment
of the promissory note and payments under the installment
method; and (2) treatment of $14,950,000 as long-term rather
than short-term capital gain.[24]  (Docket Entry # 141-13, p. 2).
Merchia did not present the theory that the $2.25 million check
was excludable from 2012 income as uncashable, and he submitted
financial materials to the IRS showing he received a $2.25
million check in 2012.  (Docket Entry # 148-2, p. 7).  Instead,

_____

[23]  Specifically, he objected to the tax method used by the IRS
of "characteriz[ing] gain as [s]hort term, where as the tax
payer had characterized it as long term."  (Docket Entry # 140-
8, pp. 5, 15).
[24]  Like the September 2015 Examination Report, the Appeals
Office allowed additional deductions relative to schedules C-1,
C-2, and E-1 and overall adjusted Merchia's 2012 income downward
by $47,583.  (Docket Entry # 141-12, pp. 6, 8-10) (Docket Entry
# 141-13, pp. 1, 5).  Whereas the Appeals Office adjusted upward
Merchia's rental income by $30,000 (schedule E-1), adjusted
upward Merchia's business gross receipts from "D3 Medical
Holdings" by $173 (schedule C-2), and adjusted downward
Merchia's business gross receipts from "SleepHeart Diagnostics"
by $84 (schedule C-1), Merchia does not challenge these
particular offset amounts (Docket Entry # 141-13, p. 5) except
to broadly point out that the United States Tax Court determined
an overpayment of $6,701.85 for the 2010 tax year and another
overpayment for the 2009 tax year (Docket Entry # 158, p. 9, ¶
27) (Docket Entry # 34-3, p. 3).  See Curet-Velázquez, 656 F.3d
at 54; Coons, 620 F.3d at 44.  Overpayments in other tax years
is not a challenge to offsets in the 2012 tax year.

26

what Merchia did present to the IRS was the $15 million
promissory note as taxable under the installment method pursuant
to regulation 15a.453-1 and the classification of long-term
capital gain incorrectly as short-term capital gain.  An
argument seeking a refund because the $2.25 million check was
not cashable and therefore not received in 2012 (Docket Entry #
149, pp. 1-2, 7) is a substantial variance from an argument that
defendant must prove that the promissory note is taxable or
evidences an installment sale subject to the installment
reporting method under regulation 15a.453-1 and that the amount
is treated as long-term capital gain.  The variance doctrine
excludes the new argument and limits this court's review to the
arguments Merchia raised administratively to the IRS.

B.  Duty of Consistency

Defendant additionally argues that due to the duty of
consistency, Merchia is estopped from arguing that the
$14,950,000 reported on the Original 2012 Return and the $2.25
million check that he presented as received in 2012 (Docket
Entry # 158-18, p. 5) were actually received in another year,
which is now time-barred from an assessment.  (Docket Entry #
163, pp. 14-15) (Docket Entry # 142, pp. 17-20).  In response,
Merchia argues that defendant "misapplies the 'duty of
consistency'" as estopping him from recouping a significant
overpayment of taxes and the duty does not pertain to the

27

question of law in this case, i.e., whether the promissory note should be treated as income in 2012. (Docket Entry # 157, pp. 6-8). Merchia maintains that he did not receive the $14,950,000 income reported in the Original 2012 Return and SleepHeart of Virginia LLC did not have the funds to pay the "uncashable check for $2.25 million." (Docket Entry # 157, p. 7).

As previously noted, Merchia maintains the $14,950,000 included the promissory note. For reasons explained in Roman numeral I(C), the payable-on-demand promissory note results in the entire amount treated as 2012 income. It is therefore not necessary to address defendant's duty of consistency argument regarding the $14,950,000 reported income to recommend allowance of defendant's summary judgment motion. Separately, the variance doctrine estops Merchia from claiming he erroneously included the "undepositable" $2.25 million check as income in 2012 thus entitling him to a refund.

C.  <u>Promissory Note as Not Excludable from Income</u>

As noted, Merchia argued in his administrative filings with the IRS that the installment payments under the promissory note not received by Merchia in 2012 are excluded from his 2012 income under regulation 15a.453-1. (Docket Entry # 141-10, pp. 3-4). Defendant maintains that section 453(f)(4) creates an exception to the general rule that a taxpayer's receipt of a payment for an installment sale in a later tax year is treated

as income in that later tax year.  The exception is for
obligations "'payable on demand,'" 26 U.S.C. § 453(f)(4), and
the promissory note was payable on demand, under applicable
state law, because it did not have a repayment date, according
to defendant.  (Docket Entry # 142, pp. 15-17) (Docket Entry #
163, pp. 5, 13-17).

The sale of Merchia's medical software company to
SleepHeart of Virginia LLC was designed to be paid in
installments.  (Docket Entry # 141-10, pp. 3-4).  Because of
this structure, the transaction falls within the criteria set
out in section 453 and regulation 15a.453-1, which governs the
installment method.  See Principal Life Ins. Co. v. United
States, 70 Fed. Cl. 144, 146 n.3 (Fed. Cl. 2006); Holt v. United
States, 39 Fed. Cl. 525, 525 n.1 (1997).  An "'installment
sale'" is a "disposition of property where at least [one]
payment is to be received after the close of the taxable year in
which the disposition [of property] occurs."  26 U.S.C. §
453(b)(1); 26 C.F.R. § 15a.453-1(b)(1).  The installment method
is a method under which "income recognized for any taxable year
from a disposition" of property "is that proportion of the
payments *received in that year* which the gross profit (realized
or to be realized when payment is completed) bears to the total
contract price."  26 U.S.C. § 453(c) (emphasis added); accord 26
C.F.R. § 15a.453-1(b)(2).  Section 453(c) allows taxpayers to

report income from installment "payments" in the year they receive the payment as opposed to when the sale is made.  26 U.S.C. § 453(c); accord 26 C.F.R. § 15a.453-1(b)(2).

Relatedly, section 453 defines "'payment'" to "not include the receipt of evidences of indebtedness of the person acquiring the property."  26 U.S.C. § 453(f)(3).  "'[E]vidence of indebtedness'" has been defined as, and is understood to include, "any printed or written instrument, signed or otherwise executed by the obligor(s), which evidences on its face a legally enforceable obligation to pay money."  River Cmty. Bank, N.A. v. Bank of N.C., Civil Action No. 4:14-00048, 2015 WL 3822385 at *6 (W.D. Va. June 19, 2015) (internal citations omitted); see United States v. Jones, 450 F.2d 523, 525 (5th Cir. 1971) ("[t]he term 'evidence of indebtedness' embraces only such documents as promissory notes which on their face establish a primary obligation to pay the holders thereof a sum of money"); see also United States v. Austin, 462 F.2d 724, 736 (10th Cir. 1972) (noting that evidence of indebtedness is defined as "not limited to a promissory note or other simple acknowledgment of a debt owing and is held to include all contractual obligations to pay in the future").  Promissory notes are thus commonly understood to constitute evidence of indebtedness, see In the Matter of Rego Crescent Corp. v. Tymon, 23 B.R. 958, 962 (E.D.N.Y. LBR 1982); Greenhouse v. Comm'r of

30

Internal Revenue, Docket No. 40052, 1954 WL 262, (Aug. 30, 1954); Barry v. Snowden, 106 F. 571, 572 (Cir. Ct. D. Ind. 1901), and section 453(f)(3) therefore generally excludes promissory notes from constituting "payments" reported in the year received.  26 U.S.C. § 453(f)(3); see 26 U.S.C. § 453(c). The promissory note (Docket Entry # 158-5, p. 3) therefore constitutes evidence of indebtedness.

An exception to the above definition of "'payment'" as not including the seller's receipt of "evidences of indebtedness" from "the person acquiring the property" 26 U.S.C. § 453(f)(3), is when the evidence of indebtedness "is payable on demand, or readily tradable."  26 U.S.C. § 453(f)(4); accord 26 C.F.R. §§ 15a.453-1(b)(3), 15a.453-1(e).  Section 453 commands that "evidence of indebtedness" that is "payable on demand," or "readily tradable, *shall* be treated as *receipt of payment*" for purposes of section 453.  26 U.S.C. 453(f)(4) (emphasis added); accord 26 C.F.R. §§ 15a.453-1(b)(3), 15a.453-1(e); see Applegate v. Comm'r of Internal Revenue, 980 F.2d 1125, 1128 (7th Cir. 1992) (interpreting section 453 under Illinois law and describing how receipt of "evidence of indebtedness which . . . is payable on demand . . . shall be treated as receipt of payment"); Barrett v. Comm'r of Internal Revenue, No. 12895-93, 1996 WL 196541, at *6 (T.C. Apr. 24, 1996) ("note was not a 'payment' within the meaning of the relevant sections because it

was neither payable on demand nor readily tradable"); Estate of
Silverman v. Comm'r of Internal Revenue, 98 T.C. 54, 69 (T.C.
1992) ("[s]ection 453(f)(3) provides that unless readily
tradable or payable on demand, payment does not include
purchaser evidences of indebtedness"); Ehlert v. Comm'r of
Internal Revenue, Docket No. 21226-81, 1985 WL 15106, at *n.9
(T.C. Sept. 16, 1985) (note payable on installment plan that is
"neither payable on demand nor readily tradable" will not
constitute payment).

The accompanying treasury regulation provides further
guidance on exceptions to the installment method of reporting
income.  26 C.F.R. § 15a.453-1.  In no uncertain terms,
regulation 15a.453-1 clarifies that evidence of indebtedness
that is "payable on demand *shall* be treated as a payment in the
year received, *not* as installment obligations payable in future
years."  26 C.F.R. § 15a.453-1(e)(1)(i) (emphasis added); see
Mueller v. Comm'r of Internal Revenue, No. 3336-95, 2001 WL
812253, at *7 (T.C. July 19, 2001) (finding demand debentures
were "evidences of indebtedness payable on demand" and
installment method unavailable such that there were no payments
in years after sale of debentures).  The regulation points to
applicable state or local law for determining the meaning of
"payable on demand."  26 C.F.R. § 15a.453-1(e)(3) ("obligation
shall be treated as payable on demand only if the obligation is

treated as payable on demand under applicable state or local law").

Massachusetts, having adopted the Uniform Commercial Code ("UCC"), defines "'payable on demand'" as a promise or order that either "(i) states that it is payable on demand or at sight, or otherwise indicates that it is payable at the will of the holder, or (ii) *does not state any time of payment*."[25]  Mass. Gen. Laws ch. 106, § 3-108(a) (emphasis added).  Courts interpret this language, and language in similar statutes, to mean that if there is no specified date for when the balance is due, the note is considered payable on demand.  See Blasco v. Money Servs. Ctr. d/b/a Cash Connection (In re Blasco), 352 B.R. 888, 894-95 (Bankr. N.D. Ala. R. 2006) (examining payable-on-demand statute containing language similar to Massachusetts' payable-on-demand statute and concluding that check issued in

---

[25]  Because both parties cite Massachusetts state law in their arguments, this court will apply Massachusetts law.  (Docket Entry # 142, p. 14) (Docket Entry # 157, p. 5).  Defendant asserts that Merchia lived in Massachusetts when the 2008 sale took place.  (Docket Entry # 142, p. 16, n.10).  Merchia testified at his deposition that "[he] had already moved to Florida" by the time the promissory note was executed and that Pendse "was still based in the D.C. area." (Docket Entry # 141-20, p. 44).  In any event, defendant correctly notes (Docket Entry # 142, p. 16, n.10) that all the states other than Massachusetts in which Merchia purportedly resided or did reside (Virginia, Maryland, Florida) "have adopted the same UCC principle" that deems promissory notes without a repayment date to be payable on demand.  See Va. Code Ann. § 8.3A-108(a)(ii); Md. Code, Com. Law § 3-108(a)(ii); Fla. Stat. § 673.1081(1)(b).

payday loan transaction was payable on demand because it did not state any time of payment); Ranieri v. Terzano, 457 N.E.2d 906, 910 (Ohio Ct. App. 1983) (examining payable-on-demand statute containing language similar to Massachusetts' payable-on-demand statute and concluding that notes were "due on demand, since they specified no maturity date").

In the case at bar, the promissory note falls into the exception for the installment method outlined in section 453(f)(4) because it is "payable on demand."  26 U.S.C. § 453(f)(4)(A); accord 26 C.F.R. § 15a.453-1(e)(1)(i).  It is payable on demand because no date of repayment is listed anywhere on the promissory note.  Mass. Gen. Laws ch. 106, § 3-108(a).

Merchia nevertheless argues that "[t]he terms embodied in the note [were] that payment was due 'as-is able'" and, because of this, the promissory note is not a demand note.  (Docket Entry # 157, pp. 5-6).  In particular, he submits that the promissory note's terms reflect that SleepHeart of Virginia LLC's payment was due "as-is able" contingent upon the company's "ability to pay an installment" or that receipt of a promissory note is not payment to discharge a debt.  (Docket Entry # 157, pp. 5-6).  Defendant disagrees and distinguishes three of the cases Merchia cites.  (Docket Entry # 163, pp. 13-14).  In the case at bar, the note does not contain any language that

suggests the payments were to be made on an "as-is able" basis.
(Docket Entry # 141-15).  The cases that Merchia cites in
opposition to defendant's motion to support his arguments
(Docket Entry # 157, pp. 5-6) are distinguishable.[26]

The decision in Dial concerned secured notes or bonds that
were payable with principal and interest over a 24-month period.
Dial, 24 T.C. at 118, 123.  Decided in 1955, Dial did not
pertain to the tax treatment of a promissory note in the context
of an installment sale under section 453 and regulation 15a-453-
1.  See id.  The circumstances in Dial therefore differ from
those in the case at bar.  The decision in Mellinger, decided in
1938, dealt with replacement notes given to replace two prior
notes in default, which were then canceled, as well as interest
on those notes.  Mellinger, 21 F. Supp. at 966-67.  The case did
not involve a demand note or a promissory note falling within
the exception in section 453(f)(4)(A).  Mellinger, 21 F. Supp.
at 966-67.  Hence, the principle cited by Merchia (Docket Entry
# 157, p. 5) and stated in Mellinger, 21 F. Supp. at 967 (absent
"agreement or consent to receive it as such, a promissory note
of the debtor, although accepted by the creditor, does not in

---

[26]  Overnite Transp. Co. v. Comm'r of Internal Revenue, 764
N.E.2d 363 (Mass. App. Ct. 2002) ("Overnite"); Shawmut Bank,
N.A. v. Miller, 617 N.E.2d 688 (Mass. 1993) ("Shawmut"); Dial v.
Comm'r of Internal Revenue, 24 T.C. 117 (1955) ("Dial");
Mellinger v. United States, 21 F. Supp. 964 (Ct. Cl. 1938)
("Mellinger").

itself constitute payment or amount to a discharge of the debt"), does not apply because the statute, 26 U.S.C. § 453(f)(4), instructs that the payable-on-demand promissory note is receipt of payment.[27]  Merchia's reliance on the decision in Shawmut is actually harmful to his argument because Shawmut points out that "[t]he note is a demand note at least because it is an instrument in which no time for payment of principal is stated."  Shawmut, 614 N.E.2d at 669.  The decision therefore supports defendant's argument that the promissory note at issue in this case is a demand note.  Finally, the decision in Overnite involved whether an issuer of notes could deduct the resulting interest from his income.  Overnite, 764 N.E.2d at 364-72.  As defendant aptly describes in its reply (Docket Entry # 163), this case did not concern the tax treatment of a note in the context of an installment sale.

In sum, the promissory note is evidence of indebtedness because it is a legally enforceable promise to pay.  See Mass. Gen. Laws ch. 106, § 3-303(a)(3); Austin, 462 F.2d at 736; Jones, 450 F.2d at 525; Bank of N.C., 2015 WL 3822385 at *6.  It also lies within the exception in section 453(f)(4) as further

---

[27]  Merchia's brevis argument, if any, that the promissory note is not evidence of indebtedness because it lacked consideration (Docket Entry # 157, p. 5) (citing Overnite, 764 N.E.2d at 367) is not adequately developed.  See Curet-Velázquez, 656 F.3d at 54; Coons, 620 F.3d at 44.

clarified in regulation 15a.453-1(e) because it is payable on demand.  Merchia was therefore correct to include the amount of the promissory note in the Original 2012 Return as opposed to limiting his reported income to installment payments received in 2012.  The variance doctrine bars Merchia from arguing an overpayment exists based on the purportedly erroneous inclusion of the uncashable $2.25 million check.  Accordingly, defendant is entitled to summary judgment on the section 7422 tax refund claim.[28]

## II.  Merchia's Motion for Summary Judgment

Merchia seeks summary judgment "as to all allowed counts of his [a]mended [c]omplaint."  (Docket Entry # 147, p. 2).  Viewing the facts in the light most favorable to defendant, they are as follows.

### FACTUAL BACKGROUND

In 2008, Merchia sold his business, which included medical technology he had developed, to SleepHeart of Virginia LLC for $30 million.  (Docket Entry # 152, pp. 2-3, ¶ 1) (Docket Entry # 148, ¶ 1).  There are no original sale documents connected with this sale.[29]  Notwithstanding Merchia's argument to the contrary,

---

[28]  It is therefore not necessary to address defendant's alternative arguments in favor of summary judgment or evidentiary arguments rendered moot by the recommended allowance.

[29]  Defendant asks this court to draw a negative inference from this lack of documentation.  See Nation-Wide Check Corp., Inc.

this action arose from the tax treatment of the promissory note. (Docket Entry # 148-2, pp. 103-104) (Docket Entry # 157, p. 2) (Docket Entry # 148, p. 1, ¶ 3) (Docket Entry # 147, p. 1).

Merchia purports to have received a $15 million promissory note in 2012 signed by Pendse as "Member" of SleepHeart of Virginia LLC.[30]  (Docket Entry # 140, p. 9) (Docket Entry # 141-15, p. 2).  By affidavit, Merchia attests he also received the "undepositable check" for $2.25 million and "$3,144,448 in installment payments" from SleepHeart of Virginia LLC in 2012.[31]

---

v. Forest Hills Distribs., Inc., 692 F.2d 214, 217-19 (1st Cir. 1982) (noting that non-production of document supports inference that document was harmful to party that did not produce the document).  Because a negative inference would not change the recommended denial of Merchia's motion for summary judgment, this court need not address the issue.

Defendant also states that Merchia's only evidence to support that installment payments from the sale were to be paid "as [SleepHeart of Virginia LLC] made money" is a hearsay statement in Merchia's affidavit.  (Docket Entry # 152, p. 3, ¶ 2) (italics omitted); (Docket Entry # 148-2, p. 2, ¶ 2).  The statement in Merchia's affidavit reads as follows: "This $30 million was to be paid by [SleepHeart of Virginia LLC] as it made money from using the technology I had developed."  (Docket Entry # 148-2, p. 2, ¶ 2).  In his reply, Merchia did not address this argument that the statement (Docket Entry # 148-2, p. 2, ¶ 2) constitutes hearsay and therefore waives the issue. See Curet-Velázquez, 656 F.3d at 54; Coons, 620 F.3d at 44.

[30]  The parties dispute how much money Merchia received and when he received it in and around 2012.  (Docket Entry # 152, pp. 5-6, ¶ 4).  For purposes of Merchia's summary judgment motion, the factual issues are resolved in favor of defendant as the nonmoving party.

[31]  Merchia calculates the $3,144,448 of installment payments received in 2012 as comprising: (1) "$1,260,615 in conversion of prior loans to payments" (Docket Entry # 152, p. 22, ¶ 31); (Docket Entry # 148-2, p. 7) (listing two loan payments on August 2, 2012, which total $1,260,615.96); (2) "1,921,000 in

(Docket Entry # 148-2, p. 2, ¶ 3).  Merchia reported receipt of

$14,950,000 as capital gain income on the Original 2012 Return.

(Docket Entry # 141-1).

On June 5, 2014, Merchia filed the Form 1040X amended

return in which he first mentioned the promissory note and then

excluded it from income.[32]  (Docket Entry # 141-10).  The June 5,

2014 Form 1040X thus asserted a new taxable income of $4,650,634

for the 2012 tax year and entitlement to a $1,564,368 refund.[33]

(Docket Entry # 141-10, pp. 2-4).  After the filing of the June

---

checks and wires and transfers" (Docket Entry # 152, p. 22, ¶
31); (Docket Entry # 148-2, p. 7) (listing checks, wires, and
transfers totaling this amount without including the listed
$2.25 million check); (3) "$23,756 in payments of student loan
[and] credit card bills" (Docket Entry # 152, p. 22, ¶ 31);
(Docket Entry # 148-2, p. 7) (listing student loan and credit
card payments totaling this amount); and (4) subtracting
"$60,923" as "not installment payments" (Docket Entry # 148-2,
p. 7) (subtracting $30,000, $8,723.53, and $22,200 to arrive at
"installment sale payments to [Merchia]").  Merchia extracts
these figures from the same, previously described financial
document discussed in footnote 22.  (Docket Entry # 152, p. 22,
¶ 31); (Docket Entry # 148-2, p. 7) (Docket Entry # 158-18, p.
5).  However, he subtracts the $2.25 million check from the
"installment sale payments" of $5,394,448.93, see fn. 23, to
arrive at the $3,144,448 amount.  (Docket Entry # 148, p. 5, ¶
32).  The IRS Bates number on the document indicates that these
2012 installment payments were presented to the IRS at some
point.  (Docket Entry # 48-2, p. 7).  As discussed infra, even
overlooking arguendo defendant's hearsay objection regarding
these installment payments of $3,144,448, they are encompassed
within the larger amount of the promissory note based on the $30
million installment sale.  (Docket Entry # 158-5, p. 3) (Docket
Entry # 141-10, p. 3).
[32]  Merchia filed previous amended tax returns which did not
mention the promissory note.
[33]  The return requested that $100,000 of this amount be applied
to Merchia's 2013 estimated tax.

5, 2014 Form 1040X, the IRS audited Merchia's Original 2012
Return and amended return.  (Docket Entry # 148, ¶ 10) (Docket
Entry # 152, ¶ 10) (Docket Entry # 148-2, p. 3, ¶ 8).  During
the examination, the IRS made three Information Document
Requests to Merchia and requested meetings and interviews.
(Docket Entry # 148, ¶ 11) (Docket Entry # 152, ¶ 11).

In September 2015, the IRS Small Business and Self-Employed
division determined Merchia's new tax liability and did not
allow all of the changes that he attempted to make.  (Docket
Entry # 141-12, pp. 5-17).  Merchia filed an appeal.  (Docket
Entry # 148, ¶ 19) (Docket Entry # 152, ¶ 19).  Ultimately, in
June 2016 the IRS Appeals Office concurred with the September
2015 Examination Report, changed the $15 million installment
gain from short-term to long-term capital gain, and did not
allow the exclusion of the $15 million as "installment gain"
from 2012 income.  (Docket Entry # 141-13, p. 2) (italics
omitted).

<u>DISCUSSION</u>

As noted, Merchia moves for summary judgment on "all
allowed counts of his [a]mended [c]omplaint" against defendant,
specifically, the tax refund claim against the United States
under section 7422 for the erroneous or illegal assessment or

collection of taxes for the 2012 tax year.[34]   (Docket Entry #
147).  Merchia argues that the burden shifts to defendant under
section 7491(a) to prove that Merchia received payment from the
$2.25 million check in 2012.  (Docket Entry # 147).
Specifically, he submits that defendant cannot prove that he
received anything more than the aggregate $3,144,448.93
installment payment in 2012 and the $2.25 million check was
"undepositable" thus warranting summary judgment in his favor.
(Docket Entry ## 149, 164).

Defendant opposes the summary judgment motion on the
grounds that: this court lacks jurisdiction over Merchia's
additional grounds for a refund under the variance doctrine;
Merchia has not met the standard to shift the burden to
defendant under section 7491(a); the promissory note is a sham;
and Merchia has not shown defendant's assessment was incorrect.
(Docket Entry # 155).  In opposing the summary judgment motion,
defendant incorporates by reference all of the arguments it
makes in support of its summary judgment motion.  (Docket Entry
# 155, p. 6).  Accordingly, defendant argues that the promissory
note is evidence of indebtedness that falls into the payable-on-
demand exception under section 453(f)(4) and is therefore

---

[34]  This court allowed the motion to amend only as to Count
Three, the section 7422 tax refund claim for the 2012 tax year.
(Docket Entry # 49, pp. 3, 8, 22, nn.2, 5).

treated as receipt of payment in 2012.  (Docket Entry # 155, p. 6) (Docket Entry # 142, pp. 15-17).  Merchia does not directly address regulation 15a.453-1 in his motion for summary judgment or his reply to defendant's opposition.

A.  Variance Doctrine

During the administrative proceedings, Merchia raised the promissory note's taxability in his claim for a refund to the IRS.  (Docket Entry # 141-10, pp. 3-4).  Defendant argues that the variance doctrine bars Merchia from changing his argument for seeking a refund now to argue that the $2.25 million check was "undepositable" and therefore not received in 2012.  (Docket Entry # 155, pp. 6-7).  Defendant is correct.

As discussed in Roman numeral I(A), taxpayers are prohibited from substantially varying, either legally or factually, a claim for a refund and are only permitted to rely on grounds specified in the claim presented to the IRS.  Mobil Corp. v. United States, 52 Fed. Cl. 327, 331 (fed. Cl. 2002); see Lockheed, 210 F.3d at 1371; Ottawa Silica Co. v. United States, 699 F.2d 1124, 1138-39 (Fed. Cir. 1983).  Merchia presently argues to this court that he "incorrectly continued to include the [$2.25 million] check" in the June 5, 2014 Form 1040X even after he spoke with Kassis and excluded the promissory note from income.  (Docket Entry # 149, p. 2).  Merchia further argues that defendant cannot prove that he

received the $2.25 million cash amount of the check in 2012.
(Docket Entry # 147).  The argument that the $2.25 million check
was not cashable and, as such, should not be included in 2012
income is a new factual basis and a new legal theory for
Merchia's claim for a refund.  See Muskat, 554 F.3d at 195;
Lockheed, 210 F.3d at 1371.

The administrative filings with the IRS do not contain this
substantially varied legal theory of the case.  (Docket Entry ##
141-6, 141-8, 158-6).  Throughout the administrative proceeding,
Merchia's claim was based on regulation 15a.453-1, and how he
believed that the promissory note was not taxable until the year
payment was received as well as treatment of capital gain as
long-term.  (Docket Entry # 158-3, ¶ 12) (Docket Entry # 141-10,
pp. 3-4).  For example, in the June 5, 2014 Form 1040X amended
return, Merchia set out what he believed was the relevant
argument and the relevant section of regulation 15a.453-1: "the
term 'payment' does not include the receipt of evidences of
indebtedness of the person acquiring the property . . .
[p]ayments include amounts actually or constructively received
in the taxable year."  (Docket Entry # 141-10, p. 4) (emphasis
omitted).  As further reflected in the June 5, 2014 Form 1040X,
Merchia interprets regulation 15a.453-1 to establish that a
"[p]romissory note [is] not a receipt of [payment] from an
'instalment [sic] sale.'"  (Docket Entry # 141-10, p. 4).

Merchia does not provide sufficient evidence that he put the IRS on notice that the $2.25 million check was not cashable and the amount was therefore incorrectly included in his 2012 income.[35] This argument substantially varies legally and factually from the administrative claim Merchia made to the IRS.

---

[35] Defendant challenges the evidence Merchia submits. For example, Merchia's reference in his LR. 56.1 statement (Docket Entry # 148, ¶ 20) and affidavit (Docket Entry # 148-1, ¶ 15) to a "settlement offer" as continuing to tax Merchia for the $2.25 million "undepositable check" is not supported by the cited exhibit (Docket Entry # 148-2, pp. 79-81, i.e., "Exhibit 9") in contravention of LR. 56.1. It is also a fact that "cannot be presented in a form that would be admissible in evidence," Fed. R. Civ. P. 56(c)(2), for reasons stated by defendant (Docket Entry # 152, p. 17, ¶¶ 20-21, Responses) (Docket Entry # 142, pp. 11-12). In addition, Merchia's August 6, 2015 letter to the IRS Examiner asking her to confirm statements she made during a telephone conversation is, as argued by defendant (Docket Entry # 152, pp. 4-5), hearsay to the extent offered for the truth of the IRS Examiner's statements.

Represented by counsel, Merchia's statement in his LR. 56.1 statement that the "$5.39 million included the $2.25 million check" (Docket Entry # 148, ¶ 33) along with the cited exhibits (Docket Entry # 148-2, pp. 6-26, i.e., "Exhibit 2") (Docket Entry # 148-2, pp. 114-125, i.e., "Exhibit 15") do not outline an argument Merchia made during the administrative process or serve as adequate notice to the IRS during the administrative process that the check was "undepositable" and included in error as income in the Original 2012 Return and the subsequent amended returns. This remains true notwithstanding the "VOID" stamped on the check with an IRS Bates number (Docket Entry # 148-2, p. 16). See Magnone, 733 F. Supp. at 618 (noting "[i]t is not enough" for IRS to "'have in its possession information from which it might deduce that the taxpayer is entitled to, or might desire, a refund'") (citation omitted). As stated by defendant in interrogatory answers, Merchia included the check in "his list of installment sale payments received from SleepHeart of Virginia LLC, during 2012, which totaled $5,394,448.93." (Docket Entry # 148-2, pp. 122-123); (Docket Entry # 148-2, p. 7) (listing check as included in total).

Defendant also contends that Merchia's argument that he only received $3,144,448.93 of installment income in 2012 is at variance with his administrative claim.  (Docket Entry # 155, p. 6).  It is not necessary to address this aspect of defendant's variance argument.  As discussed below, limiting installment payments to those received in the 2012 tax year (purportedly $3,144,448) is contrary to section 453(f)(4) and regulation 15a-453-1 because the payable-on-demand promissory note falls under the exception to the installment method pursuant to section 453(f)(4).

B.   Section 453(f)(4) and Regulation 15a.453-1

Defendant argues that the promissory note was payable on demand and therefore considered evidence of indebtedness included as income in the year received rather than as an installment obligation payable in future years.  (Docket Entry # 155, p. 6) (incorporating arguments made in defendant's summary judgment motion); (Docket Entry # 142, pp. 15-17).  The law relative to section 453 and regulation 15a.453-1 is set out in Roman numeral I(C) and need not be repeated.  Merchia's 2012 taxable income under section 453 and regulation 15a.453-1 is the dispositive issue for Merchia's summary judgment motion just as it was for defendant's motion.  Because the promissory note does not specify a payment date, it is a demand note which falls under the exception in section 453(f)(4)(A) to the installment

method, which treats a payment for an installment sale as income
in the year the installment payment is received.  See 26 U.S.C.
§ 453(f)(4)(A); 26 C.F.R. §§ 15a.453-1(b)(1)-(3), 15a.453-1(e);
Mass. Gen. Laws ch. 106, § 3-108(a).  As a result, the
promissory note was properly reported as income in the 2012 tax
year.

     Here, Merchia's argument that he received no more than
$3,144,448 from SleepHeart of Virginia LLC of "installment
income" as "previously paid" income under the $15 million
promissory note (Docket Entry # 149, pp. 1-2) is premised on the
incorrect method of reporting income based on the amount of
promissory note payments received in 2012.  Merchia is therefore
not entitled to summary judgment on the section 7422 tax refund
claim.

     In sum, the IRS rejected the installment method (Docket
Entry # 141-5, 141-12, 141-13), and as previously discussed the
payable-on-demand promissory note reflecting the installment
sale purchase of SleepHeart LLC precludes attributing the
payments to tax years other than 2012.  Hence, even putting
aside defendant's hearsay objection, the installment method in
section 453 does not limit payments to those received in 2012
($3,144,448).  See 26 U.S.C. § 453(f)(4)(A).  Assuming *arguendo*
that the promissory note is not a sham, notwithstanding
defendant's arguments to the contrary, the promissory note is

payable-on-demand which, together with defendant's correctly premised variance argument, warrants the recommended denial of Merchia's summary judgment motion.[36]

### CONCLUSION

For the foregoing reasons, this court **RECOMMENDS**[37] that defendant's summary judgment motion (Docket Entry # 140) be **ALLOWED,** and Merchia's summary judgment motion (Docket Entry # 147) be **DENIED.**

/s/ Marianne B. Bowler
**MARIANNE B. BOWLER**
United States Magistrate Judge

---

[36]  It is not necessary to address the parties' other arguments.
[37]  Any objections to this Report and Recommendation must be filed with the Clerk of Court within 14 days of receipt of the Report and Recommendation to which objection is made, and the basis for such objection should be included.  See Fed. R. Civ. P. 72(b).  Any party may respond to another party's objections within 14 days after service of the objections.  Failure to file objections within the specified time waives the right to appeal the order.